UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LISA EISCHEN,

    Plaintiff,

v.

MONDAY COMMUNITY
CORRECTIONAL INSTITUTION,

    Defendant.

Case No. 3:14-cv-48

Judge Thomas M. Rose

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. 8) AND PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (DOC. 9)**

---

  This case is before the Court on the Motion for Summary Judgment (Doc. 8) filed by Defendant Monday Community Correctional Institution ("MCCI") and Motion for Partial Summary Judgment (Doc. 9) filed by Plaintiff Lisa Eischen ("Eischen"). As explained in greater detail below, the Court denies both of these motions due to the existence of genuine issues of material fact regarding MCCI's liability on Eischen's claims.[1]

## I. PROCEDURAL BACKGROUND

  On February 12, 2014, Eischen initiated this lawsuit against MCCI. (Doc. 1.) On February 28, 2014, Eischen filed the Amended Complaint, which brings claims against MCCI under the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Ohio Laws Against Discrimination ("OLAD"). (Doc. 3.) On April 14, 2014, MCCI filed its Answer to the Amended Complaint. (Doc 5.) After the completion of discovery, on

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Brian Dressel in drafting this opinion.

March 23, 2015, MCCI filed a Motion for Summary Judgment on all claims and Eischen filed a Motion for Partial Summary Judgment on her claim that MCCI violated the Family Medical Leave Act. (Docs. 8, 9.) As of April 30, 2015, both of these motions were fully briefed and are therefore ripe for the Court's review.

## II.   FACTUAL BACKGROUND

### A.   Introduction

On June 12, 2010, MCCI hired Eischen as a full-time Nursing Supervisor. (Doc. 9-2 at 9.) On April 29, 2013, at Eischen's request, MCCI moved Eischen into a part-time nursing position and assigned another nurse, Victoria Smith ("Smith"), to the Nursing Supervisor position. (Doc. 9-2 at 12; Doc. 9-3 at 7, 13) Smith took charge of creating the monthly schedules for the nurses, which were prepared one month in advance, and became Eischen's direct supervisor. (Doc. 9-3 at 10, 14.) Eischen's part-time nursing position was listed with the schedule "As Assigned" and without any guaranteed hours. (Doc 8-8.) Eischen claims, however, that Smith told her that she would be working an average of 25 hours per week as a part-time nurse. (Doc. 9-2 at 18.) In May and June 2013, Eischen worked approximately 25 hours per week. (Doc. 9-3 at 15-16.)

### B.   Request for Leave and Subsequent Events

On June 6, 2013, Eischen informed MCCI that she would be having knee surgery on September 16, 2013, and would need to take time off as a result. (Doc. 8-9.) Eischen completed the appropriate FMLA paperwork for her leave request (Doc. 8-10), and MCCI approved her request on July 25, 2013. (Doc. 9-5.)

On May 2, 2013, a couple months before approval of Eischen's leave request, Smith emailed MCCI's facility director about increasing the size of the nursing staff. (Doc. 8-12.) Subsequent to that request, MCCI hired one new full-time nurse, Gena Veno ("Veno") (hired July

2

15, 2013), and two new part-time nurses, Anna Maria Stoeckicht ("Stoeckicht") (hired August 5, 2013) and Cynthia Mostyn ("Mostyn") (hired in October 2013, after Eischen began her leave). (Doc. 8-5 at 2; Doc. 9-1 at 12.)

After submitting her leave request, Eischen began working fewer hours. Eischen asserts that she worked 71.5 hours in July 2013, 29 hours in August 2013, and 3 hours in September 2013. (Doc. 9, citing Doc 9-3, Ex. 1 at 6-10.) By comparison, Stoeckicht, one of the new part-time nurses, worked 93.25 hours in August 2013, and 34 hours in September 2013. (Doc. 9-3, Exhibit 7 at 1-4.) Smith testified that Eischen worked progressively fewer hours during these months because Veno had been hired as a full-time nurse and Smith was training Stoeckicht. (Doc. 9-3 at 17-18.)

On November 19, 2013, Eischen's doctor sent MCCI a release form stating that Eischen was cleared to return to work on December 3, 2013. (Doc. 9-8.) At this point, the stories of Eischen and MCCI diverge. Eischen testified that she spoke with Smith, the Nursing Supervisor, near the beginning of December 2013 and reiterated her ability to return to work, but was told that there were no hours. (Doc. 9-2 at 27-28.) Eischen further testified that Smith said that she would be contacted if any hours became available. Eischen claims not to have heard anything from MCCI during all of December and most of January. (Doc. 9-2 at 29.)

Smith's account of what happened during this period differs from Eischen's account. Smith claims that she called Eischen on December 9, 2013 and left a voicemail message asking Eischen to get back to her about scheduling. (Doc. 9-3 at 23.) Smith says that Eischen never called her back and that she did not hear from her until late January. (*Id*.) For her part, Eischen does not recall receiving any voicemail message from Smith. (Doc. 9-2 at 29.)

In early January 2014, MCCI's Finance Manager projected that MCCI would be over

3

budget for the year unless cuts were made.  (Doc. 8-6 at 2.)  As a result, the hours available for part-time nurses were cut from approximately 20 to 10 hours per week.  (Doc. 9-3 at 28.)

On January 23, 2014, Eischen emailed Smith, again asking for work.  (Doc. 9-3, Ex. 3.)  On January 30, 2014, Eischen and Smith spoke on the phone.  (Doc. 9-3 at 28.)  Smith told Eischen about the reduction in hours and did not offer Eischen any of the part-time hours available for the month of February.  (Doc. 9-3 at 28-31.)  On February 12, 2014, Eischen filed her Complaint with this Court.  (Doc. 1.)  On February 18, 2014, Smith called Eischen and left a voicemail offering Eischen the opportunity to work a shift that had become open.  (Doc. 9-3 at 40-41.)  On February 19, 2014, Eischen indicated to MCCI through counsel that she believed that she had been constructively discharged and would not be returning to work.  (Doc. 9-3, Ex. 8.)

The hours for MCCI's other part-time nurses from December 2013 through February 2014 were as follows:  Stoeckicht worked 68 hours in December, 74.25 hours in January, and 42.5 hours in February.  (Doc. 9-3, Ex. 7 at 12-18.)  Mostyn worked 16 hours in December, 10 hours in January, and did not work in February.  (Doc. 9-3, Ex. 6.)

### III.  STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is denied when "there are genuine issues that can properly be resolved only by a finder of

fact because they may be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d. 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party requesting summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party is able to make this showing, the burden shifts to the non-moving party who then has to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). After the burden has shifted, the non-moving party cannot rely solely on pleadings or merely reassert its previous allegations. *Celotex*, 477 U.S. at 324. Nor is it sufficient to argue that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As it evaluates whether a material fact exists, the court assumes as true the evidence of the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. However, the mere existence of a scintilla of evidence in support of the moving party is not enough to avoid summary judgment. *Id.* at 252. There must be enough evidence for the jury to reasonably find for the non-moving party. *Id.*

**IV. ANALYSIS**

Eischen asserts the following causes of action against MCCI:

- Count I – Violation of the FMLA, 29 U.S.C. § 2611, *et seq.*

- Count II – Disability Discrimination under the OLAD, Ohio Rev. Code, Chapter 4112

5

- Count III – Retaliation for Protected Activity under the OLAD, Ohio Rev. Code, Chapter 4112

- Count IV – Disability Discrimination under the ADA, 42 U.S.C. § 12101, *et seq.*

- Count V – Retaliation for Protected Activity under the ADA, 42 U.S.C. § 12101, *et seq.*

(Doc. 3, ¶¶ 28-63.) MCCI seeks summary judgment on each of the above causes of action. Eischen seeks summary judgment only as to Count I under the FMLA. The Court addresses each of the causes of action in turn below. The ADA and OLAD claims will be addressed together since their elements are identical under the governing law.

### A. Count I: Family Medical Leave Act

Under the FMLA, eligible employees are entitled to twelve workweeks of leave during any twelve-month period when a serious health condition prevents them from being able to perform the functions of their job. 29 U.S.C. § 2612(a)(1)(D). Upon return from leave, the employee is entitled to be restored to the position that they occupied prior to going on leave. 29 U.S.C. § 2614(a)(1)(A). The employee's rights under the FMLA are limited to the rights, benefits or positions to which the employee would have been entitled had he or she not taken leave. 29 U.S.C. § 2614(a)(3)(B). There are two types of claims made under this law: interference (or entitlement) claims and retaliation claims. Eischen asserts claim for both interference and retaliation under Count I of the Amended Complaint. (Doc. 3)

#### 1. Interference Claim

In order to make out a claim against an employer for interference, an employee must show "(1) she was an eligible employee, (2) the defendant was an employer defined under the FMLA,

(3) she was entitled to leave under the FMLA, (4) she gave her employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006); *see also Walton v. Ford Motor Co*, 424 F.3d 481, 485 (6th Cir. 2005). An alternative interpretation of the last factor is that an employer cannot take an employment action against an employee based in whole or in part on the fact that the employee took leave under the FMLA. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

Here, the parties agree that the first four elements are satisfied. The only dispute is as to the fifth element. Both parties contest this element and move for summary judgment on this claim.

Eischen bases her FMLA claim on how she was treated both before and after she went on leave. Eischen first points to a consistent reduction in her hours after she requested FMLA leave. (Doc. 9, citing Doc. 9-3, Ex. 1 at 6-10.) She also cites evidence showing that another part-time nurse with less experience worked more hours than Eischen during this period. (Doc. 9-3, Ex. 7 at 1-4.) MCCI can point to Smith's statement that the training process for Stoeckicht explains these differences in hours, which implies that Eischen's FMLA leave was not a factor in the decision. (Doc. 9-3 at 17-18.) MCCI also argues that Eischen was not guaranteed any specific number of hours. (Doc. 8-8.) Eischen counters this assertion by claiming that she was told she would be working around 25 hours per week. (Doc. 9-2 at 18.)

Concerning the time after the leave, Eischen points to the fact that she was never put on the schedule, despite her requests to be scheduled. She was not scheduled after her early-December phone call, her January 23 email, or her January 30 phone call. (Doc. 9-2, at 27; Doc. 9-3, Ex. 3; Doc. 9-3, at 28.) All of this was despite giving MCCI notice that she was able to work again

7

following her leave. (Doc. 9-8.)

MCCI claims that Eischen was called about scheduling in early-December and did not return a voicemail left on her phone, which led MCCI to stop attempting to schedule her. (Doc. 9-3 at 23.) It also claims that budget reductions impacted its decision-making with regard to part-time hours. (Doc. 9-3 at 28.) Eischen denies receiving the voicemail and argues that even if the hours had been cut, she should still have received some hours. (Doc. 9-2 at 29; Doc. 10 at 7.)

The above discussion demonstrates genuine disputes over the material facts that will decide this case. Therefore, summary judgment for either party is not appropriate on Eischen's interference claim under the FMLA.

### 2. **Retaliation Claim**

To show a claim for retaliation under the FMLA, the employee must show that "(1) she was engaged in an activity protected by the FMLA, (2) the employer knew that she was exercising her rights under the FMLA, (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her, and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Arban v. West Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003).

When considering a retaliation claim under the FMLA, courts apply a burden-shifting framework that takes into account the employer's motive for its action against the employee. *Edgar*, 443 F.3d at 508 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the employee has the initial burden of demonstrating a prima facie case by showing "(1) she availed herself of a protected right under the FMLA . . . (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Id.* If the employee makes this

8

showing, the burden shifts to the employer to proffer a legitimate and nondiscriminatory rationale for discharging the employee. *Id*. (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)). Courts will grant summary judgment where the defense offers a non-discriminatory explanation for its actions that is not rebutted by the plaintiff. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 585 (6th Cir. 1992).

Here, there is not a dispute as to the first element of Eischen's prima facie case. The dispute comes in when the discussion turns to the adverse employment action and causation. Again, it is necessary to consider the facts both before and after Eischen took FMLA leave.

Eischen argues that the above-discussed reduction in hours and subsequent complete lack of hours constitutes an adverse employment action. To dispute that assertion, MCCI returns to its argument that Eischen did not have a guaranteed number of hours in the first place (Doc. 8-8) and therefore receiving fewer hours could not be an adverse employment action. Eischen again argues in response that she was guaranteed a certain number of hours when she switched to part-time work. (Doc. 9-2 at 18.)

Assuming that the fact finder would see Eischen's decrease in hours as an adverse employment action, there is also a dispute as to the third factor. MCCI argues that the pre-leave reduction in hours was a result of staffing changes that allowed for fewer hours for Eischen to work. (Doc. 9-3 at 17-18.) As for events after the leave, resolution of the previously-analyzed disputes regarding the voicemail allegedly left on Eischen's phone and the changes in nursing hours due to budget cuts are relevant to a determination of whether Eischen's protected activity caused any adverse action that she may have suffered.

Here again, summary judgment is not appropriate for either party as there are material disputes that must be resolved by a jury. Therefore, neither party is entitled to summary judgment

on Eischen's retaliation claim under the FMLA.

### B. Counts II and IV: Disability Discrimination under the OLAD and ADA

MCCI moves for summary judgment on Eischen's claims for disability discrimination in Counts II and IV of the Amended Complaint under the OLAD and ADA, respectively. Eischen's OLAD claim is analyzed under the same framework as her ADA claim. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417-18 (6th Cir. 2004) (ADA and OLAD claims are analyzed identically under governing law). Accordingly, the parties have analyzed these two claims together in the briefing on MCCI's motion for summary judgment.

The first step in this analysis is to determine whether the plaintiff has a disability. Disability includes "(1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such impairment or (3) being regarded as having such impairment." 42 U.S.C. § 12102(1). Given that definition of disability, a plaintiff must make out a prima facie case by showing "(1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir. 1999). At the summary judgment stage, the plaintiff's burden is to present evidence that would allow a reasonable jury to conclude that she suffered an adverse employment action under circumstances which show an inference of unlawful discrimination. *Macy v. Hopkins Cnty. Sch. Bd. Of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007).

The same burden-shifting framework that applied for the FMLA discussion applies here if the plaintiff is able to make out a prima facie case. If the plaintiff does this, the burden shifts to the defendant to show a non-discriminatory reason for its actions. *Plant v. Morton Int'l, Inc.*, 212

F.3d 929, 936. If the defense meets this burden, the burden shifts back to the plaintiff to show evidence that the proffered explanation is pretextual. *Id.*

Only MCCI moved for summary judgment on these claims. MCCI attempts to confine discussion of these claims to the period prior to Eischen's leave. MCCI argues that, according to Eischen's own testimony, she was not disabled after her return from leave and, as a result, MCCI's actions during that period could not constitute disability discrimination. (Doc. 8 at 17.) Eischen argues that MCCI's actions after she returned from leave are relevant because they were taken as a result of her disabled status prior to taking leave. (Doc. 10 at 13.) This dispute hinges on whether or not Eischen suffered an adverse employment action, the analysis of which reveals the same genuine issues of material fact discussed with respect to Eischen's FMLA claims. As a result, the Court concludes that MCCI is not entitled to summary judgment on Eischen's disability discrimination claims under the OLAD and ADA.

## C. Counts III and V: Retaliation under the OLAD and ADA

MCCI moves for summary judgment on Eischen's remaining claims for retaliation under the OLAD and ADA. Like Eischen's disability discrimination claims, these claims are analyzed identically under Ohio and federal law. *Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio Sup. Ct. 1998) (Ohio courts analyze retaliation claims under OLAD consistently with federal law); *see also Thomas v. Avon Products, Inc.*, 276 Fed.Appx. 484, 485 n1 (6th Cir. 2008). The parties likewise discuss these two claims together in their briefing on MCCI's motion for summary judgment.

These claims are subject to the same burden-shifting analysis as the previously discussed claims. *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007). Here, to make a prima facie case, the plaintiff must show "(1) she is engaged in a protected activity; (2) she suffered an adverse

employment action; and (3) there is a causal link between the protected activity and the adverse employment action." *Id.* For purposes of a retaliation claim, requesting an accommodation is considered a protected activity even if the employee does not actually have a disability. *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013). As the same burden-shifting test applies as before, if the plaintiff is able to make out a prima facie case, the burden would shift to the defendant to provide a non-discriminatory reason for its actions. *Bryson* 498 F.3d at 577 (applying the *McDonnell Douglas* burden-shifting test to ADA retaliation claims).

The merits of Eischen's retaliation claims again depends on the disputed issues concerning whether or not an adverse employment action occurred and the existence of a causal link between any such action and any protected activity. As discussed with the other claims, the disputes as to these issues constitute genuine issues of material fact that preclude summary judgment. Summary judgment therefore is not appropriate on Eischen's retaliation claims under the OLAD and ADA.

V.      **CONCLUSION**

Because there are genuine issues of material fact on each of Eischen's five claims, MCCI's Motion for Summary Judgment is DENIED and Eischen's Motion for Partial Summary Judgment is DENIED.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, July 24, 2015.

                                                              s/Thomas M. Rose
                                        _____
                                           THOMAS M. ROSE
                                         UNITED STATES DISTRICT JUDGE